**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Raymond P. Moore**

Civil Action No. 21-cv-00080-RM

JAWAUN WARD,

    Applicant,

v.

SEAN PRUITT, and
THE ATTORNEY GENERAL OF THE STATE OF COLORADO,

    Respondents.

---

**ORDER DENYING APPLICATION FOR WRIT OF HABEAS CORPUS**

---

Applicant Jawaun Ward is a prisoner in the custody of the Colorado Department of Corrections. Mr. Ward has filed *pro se* an amended Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 (ECF No. 8) (the "Amended Application") challenging the validity of his conviction in Denver County District Court case number 12CR5460. On March 30, 2021, Respondents filed an Answer to Application for Writ of Habeas Corpus (ECF No. 18). Mr. Ward has not filed a Reply despite being given an opportunity to do so.

After reviewing the record, including the Amended Application, the Answer, and the state court record, the Court concludes Mr. Ward is not entitled to relief.

**I. FACTUAL AND PROCEDURAL BACKGROUND**

Mr. Ward was convicted by a jury of first degree felony murder, second degree kidnaping, aggravated robbery, and burglary. The Colorado Court of Appeals described the factual and procedural background as follows in an order affirming the denial of a postconviction motion:

According to the prosecution's evidence at trial, in December 2010, Ward was owed money by Marva Camille Mitchell, a woman whom he had been dating on and off for about a year. To pay back her debt, Mitchell told Ward that the victim, a man Mitchell had briefly dated, had money and valuable items in his home that they could steal.

On December 27, 2010, Ward and Mitchell went to the victim's home, intending to break in if the victim was not there. However, when the victim answered the door, Mitchell asked the victim for his phone number and suggested that they get together later that day.

According to Mitchell, she arranged for the victim to meet her away from his home that evening near an apartment that Mitchell had previously rented. When the victim arrived, Ward and another man, N.M., tackled and handcuffed the victim and then put him in the backseat of his car. They drove back to the victim's home and, while Ward and N.M. were leading the victim from the car into the home, the victim saw Mitchell and accused her of setting him up. Ward and N.M. placed the victim in a downstairs bathroom, while Mitchell went through the home and collected various items to steal, including electronics and collectable basketball shoes. Mitchell heard the victim crying and pleading from the bathroom.

Before leaving the home, Ward and N.M. moved the victim from the bathroom into the attached furnace room. Ward assured Mitchell that the victim would not talk. The next morning, the victim was found dead, hog-tied with a plastic bag over his head.

On January 3, 2011, detectives interviewed Mitchell about the murder. Mitchell claimed that N.M. and another man, R.C. (also known as Twice), had committed this crime. Eventually, in response to the detective's questions, Mitchell stated that Ward was also with Twice and N.M. that evening. Mitchell denied her own involvement in the murder and robbery, claiming "there's no way they could put me" at the victim's home. However, Mitchell later admitted that she had lied to the detectives; she knew that Twice was incarcerated at that time and that he could not have participated in the crime.

On August 30, 2012, Mitchell agreed to be re-interviewed by detectives and gave an account that incriminated herself, Ward, and N.M. in the robbery and murder.

Prior to Ward's trial, Mitchell pleaded guilty to second degree murder of the victim and to second degree murder in a separate robbery and murder. As a condition of her plea agreement, Mitchell was required to testify truthfully against

Ward at his trial.

Ward's theory of defense was that he was not involved in the robbery and murder; Mitchell had falsely implicated him – just like she had Twice – in exchange for a lesser sentence and to avoid her own responsibility for the crime.

During cross-examination, defense counsel repeatedly questioned Mitchell about her false statements to police, the inconsistencies in her various accounts of the crime, and her motivation for confessing her involvement in the murder and reaching a plea agreement with the prosecution.

Mitchell testified that she initially lied to detectives about Twice's involvement in the victim's murder and claimed that she did so because she was scared to say that Ward had been with her that night. She said that she hoped that the police would interview N.M., who would implicate Ward in the crime.

The jury found Ward guilty of first degree felony murder, second degree kidnapping, aggravated robbery, and burglary.

While Ward's direct appeal was pending, defense counsel filed a motion for a new trial pursuant to Crim. P. 33(c), alleging that during the course of N.M.'s subsequent trial,[1] counsel discovered that an additional police interview with Mitchell had occurred on January 14, 2011. Although counsel acknowledged that the People had disclosed a video interview advisement form associated with Mitchell's January 14 interview, he said that the video itself was never disclosed. Counsel claimed that the interview had since been deleted from the police department's computer hard drive, and that neither Mitchell nor the detectives could recall what was said during that interview.

[1] After his separate trial, N.M. was acquitted of all charges related to this case.

A division of this court denied counsel's motion for a limited remand to allow the district court to rule on the motion for new trial. The district court never ruled on the motion.

After Ward's convictions were affirmed on direct appeal, *Ward*, No. 13CA1930, Ward filed a pro se motion for postconviction relief pursuant to Crim. P. 35(c), which largely repeated the arguments raised in the motion for a new trial. He argued that he was entitled to postconviction relief based on (1) discovery of new material evidence; (2) violation of his constitutional due process rights based on the prosecution's failure to preserve exculpatory evidence; and (3) ineffective assistance of counsel – all arising from the late discovery and

3

destruction of Mitchell's January 14, 2011, videotaped interview. The postconviction court denied Ward's claims without a hearing.

(ECF No. 12-8 at pp.2-6.) Mr. Ward was sentenced to life in prison without the possibility of parole.

Mr. Ward asserts three claims in the Amended Application. Claim one is an ineffective assistance of counsel claim in which Mr. Ward alleges counsel failed to investigate and obtain exculpatory evidence, i.e., the January 14, 2011 video interview, that would have impeached Ms. Mitchell's testimony. Mr. Ward contends in claim two that he was denied due process when the Government destroyed the recording of the January 14, 2011 video interview. Finally, he contends in claim three that his Fourth Amendment rights were violated by admission of evidence stemming from an illegal traffic stop on January 3, 2011. Additional facts pertinent to each claim are set forth below.

## II. STANDARDS OF REVIEW

The Court must construe the Amended Application and other papers filed by Mr. Ward liberally because he is not represented by an attorney. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). However, the Court should not be an advocate for a *pro se* litigant. *See* Hall, 935 F.2d at 1110.

Title 28 U.S.C. § 2254(d) provides that a writ of habeas corpus may not be issued with respect to any claim that was adjudicated on the merits in state court unless the state court adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). Mr. Ward bears the burden of proof under § 2254(d). *See Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

The Court's inquiry is straightforward "when the last state court to decide a prisoner's federal claim explains its decision on the merits in a reasoned opinion." *Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018). "In that case, a federal habeas court simply reviews the specific reasons given by the state court and defers to those reasons if they are reasonable." *Id.* When the last state court decision on the merits "does not come accompanied with those reasons, . . . the federal court should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale [and] presume that the unexplained decision adopted the same reasoning." *Id.* The presumption may be rebutted "by showing that the unexplained affirmance relied or most likely did rely on different grounds than the lower state court's decision, such as alternative grounds for affirmance that were briefed or argued to the state supreme court or obvious in the record it reviewed." *Id.*

The threshold question the Court must answer under § 2254(d)(1) is whether Mr. Ward seeks to apply a rule of law that was clearly established by the Supreme Court at the time the state court adjudicated the claim on its merits. *Greene v. Fisher*, 565 U.S. 34, 38 (2011). Clearly established federal law "refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000). Furthermore,

> clearly established law consists of Supreme Court holdings in cases where the facts are at least closely-related or similar to the case *sub judice*. Although the

legal rule at issue need not have had its genesis in the closely-related or similar factual context, the Supreme Court must have expressly extended the legal rule to that context.

*House v. Hatch*, 527 F.3d 1010, 1016 (10th Cir. 2008). If there is no clearly established federal law, that is the end of the Court's inquiry pursuant to § 2254(d)(1). *See id*. at 1018.

If a clearly established rule of federal law is implicated, the Court must determine whether the state court's decision was contrary to or an unreasonable application of that clearly established rule of federal law. *See Williams*, 529 U.S. at 404-05.

> A state-court decision is contrary to clearly established federal law if: (a) "the state court applies a rule that contradicts the governing law set forth in Supreme Court cases"; or (b) "the state court confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a result different from [that] precedent." *Maynard* [*v. Boone*], 468 F.3d [665,] 669 [(10th Cir. 2006)] (internal quotation marks and brackets omitted) (quoting *Williams*, 529 U.S. at 405, 120 S. Ct. 1495). "The word 'contrary' is commonly understood to mean 'diametrically different,' 'opposite in character or nature,' or 'mutually opposed.'" *Williams*, 529 U.S. at 405, 120 S. Ct. 1495 (citation omitted).
>
> A state court decision involves an unreasonable application of clearly established federal law when it identifies the correct governing legal rule from Supreme Court cases, but unreasonably applies it to the facts. *Id*. at 407-08, 120 S. Ct. 1495.

*House*, 527 F.3d at 1018.

The Court's inquiry pursuant to the "unreasonable application" clause is an objective inquiry. *See Williams*, 529 U.S. at 409-10. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather that application must also be unreasonable." *Id*. at 411. A decision is objectively unreasonable "only if all fairminded jurists would agree that the state court got it wrong." *Stouffer v. Trammel*, 738

6

F.3d 1205, 1221 (10th Cir. 2013) (internal quotation marks omitted). Furthermore,

> [E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations. [I]t is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by [the Supreme] Court.

*Harrington v. Richter*, 562 U.S. 86, 101 (2011) (internal quotation marks and citation omitted, brackets in original). In conducting this analysis, the Court "must determine what arguments or theories supported or . . . could have supported[] the state court's decision" and then "ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." *Id*. at 102. In addition, "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen*, 563 U.S. at 181.

Under this standard, "only the most serious misapplications of Supreme Court precedent will be a basis for relief under § 2254." *Maynard*, 468 F.3d at 671; *see also Richter*, 562 U.S. at 102 (stating "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable").

> As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

*Richter*, 562 U.S. at 103.

Section 2254(d)(2) allows the Court to grant a writ of habeas corpus only if the relevant state court decision was based on an unreasonable determination of the facts in light of the evidence presented to the state court. Pursuant to § 2254(e)(1), the Court presumes the state

court's factual determinations are correct and Mr. Ward bears the burden of rebutting the presumption by clear and convincing evidence. The presumption of correctness applies to factual findings of the trial court as well as state appellate courts. *See Al-Yousif v. Trani*, 779 F.3d 1173, 1181 (10th Cir. 2015). The presumption of correctness also applies to implicit factual findings. *See Ellis v. Raemisch*, 872 F.3d 1064, 1071 n.2 (10th Cir. 2017).

Finally, the Court's analysis is not complete even if Mr. Ward demonstrates the state court decision is contrary to or an unreasonable application of clearly established federal law or was based on an unreasonable determination of the facts in light of the evidence presented. *See Harmon v. Sharp*, 936 F.3d 1044, 1056 (10th Cir. 2019), *cert. denied*, 141 S. Ct. 294 (2020). If the requisite showing under § 2254(d) is made, the Court must consider the merits of the constitutional claim *de novo*. *See id.* at 1056-57.

If a claim was not adjudicated on the merits in state court, and if the claim also is not procedurally barred, the Court must review the claim *de novo* and the deferential standards of § 2254(d) do not apply. *See id.* at 1057. However, even if a claim is not adjudicated on the merits in state court, the Court still must presume the state court's factual findings pertinent to the claim are correct under § 2254(e). *See id.*

### III. MERITS OF APPLICANT'S CLAIMS

#### A. Claim One

Mr. Ward contends in claim one that counsel was ineffective by failing to investigate and obtain exculpatory evidence that would have impeached Ms. Mitchell's testimony. The evidence in question is the video recording of the January 14, 2011 follow-up interview with Ms. Mitchell. According to Mr. Ward, Ms. Mitchell was the Government's primary witness and impeaching

her testimony was key to his defense that he was not involved and had been falsely accused. Mr. Ward describes the follow-up interview as "outcome-changing evidence that . . . the ex-girlfriend falsely accused him – just like she falsely implicated [Twice] to avoid responsibility by blaming innocents for her own wrong-doing." (ECF No. 8 at p.11.)

Clearly established federal law provides that a defendant in a criminal case has a Sixth Amendment right to the effective assistance of counsel. *See Strickland v. Washington*, 466 U.S. 668 (1984). To establish counsel was ineffective Mr. Ward must demonstrate both that counsel's performance fell below an objective standard of reasonableness and that counsel's deficient performance resulted in prejudice to his defense. *See id*. at 687. If Mr. Ward fails to satisfy either prong of the *Strickland* test, the ineffective assistance of counsel claim must be dismissed. *See id.* at 697.

In general, "[j]udicial scrutiny of counsel's performance must be highly deferential." *Id*. at 689. There is "a strong presumption" that counsel's performance falls within the range of "reasonable professional assistance." *Id*. It is Mr. Ward's burden to overcome this presumption by showing that the alleged errors were not sound strategy under the circumstances. *See id*.

In the context of federal habeas corpus review under § 2254(d), a state prisoner "faces an even greater challenge." *Harmon v. Sharp*, 936 F.3d 1044, 1058 (10th Cir. 2019), *cert. denied*, 141 S. Ct. 294 (2020). "When assessing a state prisoner's ineffective-assistance-of-counsel claims on habeas review, [federal courts] defer to the state court's determination that counsel's performance was not deficient and, further, to the attorney's decision in how to best represent a client." *Id.* (internal quotation marks and brackets omitted). Thus, review under § 2254(d) is doubly deferential. *See id.* Furthermore,

9

> [f]ederal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether *any* reasonable argument exists that counsel satisfied *Strickland's* deferential standard. And because the *Strickland* standard is a general standard, a state court has . . . more latitude to reasonably determine that a defendant has *not* satisfied that standard.

*Id.* (citations and internal quotation marks omitted).

Under the prejudice prong Mr. Ward must establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*; *see also Richter*, 562 U.S. at 112 (stating that "[t]he likelihood of a different result must be substantial, not just conceivable."). In determining whether Mr. Ward has shown prejudice, the Court must look at the totality of the evidence and not just the evidence that is helpful to Mr. Ward. *See Boyd v. Ward*, 179 F.3d 904, 914 (10th Cir. 1999).

The Colorado Court of Appeals applied *Strickland* and rejected the ineffective assistance of counsel claim because, even assuming counsel's performance was deficient, Mr. Ward failed to demonstrate prejudice. More specifically, the Colorado Court of Appeals concluded Mr. Ward could not show prejudice under *Strickland* because he "fail[ed] to explain how the timely discovery of Mitchell's January 14 video interview might reasonably have led to a different result." (ECF No. 12-8 at p.21.) The state court explained:

> Ward does not contend that the missing video contained exonerating statements, nor could he. He alleges that no one remembers what was said during the interview. Instead, Ward contends that the "crux of the prosecution's case" was Mitchell's testimony and that an "additional video interview of a witness who has made numerous inconsistent statements and has blamed an innocent man" should not have been overlooked. Essentially, Ward argues that the January 14 video could have further impeached Mitchell. But he fails to explain how that

> cumulative or incrementally probative impeachment evidence would have affected the outcome of the trial when Mitchell's credibility was otherwise thoroughly attacked at trial.
>
> Ward's allegations of prejudice are bare and conclusory and do not warrant a hearing. Thus, the postconviction court did not err by summarily denying Ward's claim of ineffective assistance of counsel.

(ECF No. 12-8 at pp.21-22 (citation omitted).)

Mr. Ward is not entitled to relief on claim one under the "contrary to" clause of § 2254(d)(1) because he does not identify any materially indistinguishable Supreme Court decision that would compel a different result. *See House*, 527 F.3d at 1018.

Next, Mr. Ward fails to demonstrate the state court's decision is based on an unreasonable determination of the facts in light of the evidence presented under § 2254(d)(2). Critically, Mr. Ward fails to demonstrate the state court unreasonably determined the contents of the follow-up interview are unknown and that Ms. Mitchell's credibility was thoroughly attacked at trial.

Finally, Mr. Ward is not entitled to relief under the "unreasonable application" clause of § 2254(d)(1) because he fails to demonstrate the state court's rejection of claim one "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*, 562 U.S. at 103. Mr. Ward argues he has shown prejudice under *Strickland* because no other evidence contradicted Ms. Mitchell's testimony that she falsely accused another individual, Twice, to indirectly lead police to Mr. Ward. Thus, he contends, counsel's ineffectiveness "allow[ed] the government's damaging version of this critical fact to remain uncontradicted and unimpeached, even though there was evidence to challenge it." (ECF No. 8 at p.12 (internal quotation marks omitted).) The Court is

not persuaded because Mr. Ward's argument ignores the fact that it is unknown what Ms. Mitchell said in the follow-up interview and that "[d]uring cross-examination, defense counsel repeatedly questioned Mitchell about her false statements to police, the inconsistencies in her various accounts of the crime, and her motivation for confessing her involvement in the murder and reaching a plea agreement with the prosecution." (ECF No. 12-8 at p.4.) In light of these presumptively-correct facts, *see* 28 U.S.C. § 2255(e)(1), it was not unreasonable for the state court to conclude Mr. Ward's speculation about the impact of "cumulative or incrementally probative impeachment evidence" was insufficient to establish prejudice under *Strickland*. *See Byrd v. Workman*, 645 F.3d 1159, 1168 (10th Cir. 2011) ("mere speculation is not sufficient" to demonstrate prejudice under *Strickland*); *see also Weatherall v. Sloan*, 415 F. App'x 846, 849 (10th Cir. 2011) ("We conclude that the Colorado Court of Appeals's decision was not contrary to or an unreasonable application of federal law because [the applicant] made no more than vague and conclusory allegations to support his conspiracy claim.").

For these reasons, Mr. Ward is not entitled to relief with respect to claim one.

**B. Claim Two**

In claim two Mr. Ward contends he was denied due process because the Government destroyed the recording of Ms. Mitchell's January 14, 2011 follow-up interview. Similar to claim one, Mr. Ward describes the interview as containing exculpatory evidence "to prove that the primary witness falsely accused another man of committing the same crimes to avoid responsibility for her own wrongdoing by shifting blame to an innocent person, thus increasing the likelihood that she did the same thing to Mr. Ward." (ECF No. 8 at p.14.)

The clearly established federal law relevant to Mr. Ward's destruction of evidence claim

is found in *California v. Trombetta*, 467 U.S. 479 (1984), and *Arizona v. Youngblood*, 488 U.S. 51 (1988). In *Trombetta*, the Supreme Court noted that, "[w]hatever duty the Constitution imposes on the States to preserve evidence, that duty must be limited to evidence that might be expected to play a significant role in the suspect's defense." *Trombetta*, 467 U.S. at 488. Thus, a due process violation occurs when the state destroys or fails to preserve evidence that has "an exculpatory value that was apparent before the evidence was destroyed" and was "of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." *Id.* at 489. In *Youngblood*, the Supreme Court clarified that the Due Process Clause does not "impos[e] on the police an undifferentiated and absolute duty to retain and preserve all material that might be of conceivable evidentiary significance in a particular prosecution." *Youngblood*, 488 U.S. at 58. Instead, if the evidence is only potentially useful, i.e., the exculpatory value is not apparent prior to loss or destruction, there is no due process violation unless the defendant proves the state acted in bad faith in destroying or failing to preserve the evidence. *Id.* at 57-58.

The Colorado Court of Appeals applied this clearly established federal law in rejecting the destruction of evidence claim, explaining its reasoning as follows:

### 2. Additional Facts

> In his postconviction motion, Ward asserts that the January 14 video interview was destroyed by state action when the police department failed to keep a digital recording on its computer hard drive. He further argues that the "evidence possessed an exculpatory value that was apparent before it was destroyed." While Ward acknowledges that "no one can recall the actual content of the interview itself," he claims that "it has been established that [the interview] was not consistent with either Ms. Mitchell's statements to police on August 30, 2012 nor her trial testimony." Finally, Ward alleges that there is no other comparable evidence to the January 14 video interview because "there were no

13

[police] notes from this video and no information about what was actually on the video." He claims that "other than stating that it was inconsistent with Ms. Mitchell's final statement, it is impossible to recreate the interview from January 14, 2011."

The postconviction court denied Ward's claim, finding that "there are no facts indicating that the destruction of the [January 14 video] was intentional and deliberate. Most importantly, however, there are no facts to show that the [January 14 video] was known to be material to [Ward's] case, but rather merely another potential means to impeach Ms. Mitchell." The court concluded that Ward was not entitled to a new trial because "there is no showing that the potential additional impeachment of Ms. Mitchell would lead to [Ward's] exculpation.

3. Analysis

Applying the test articulated in *Braunthal*, we conclude that Ward's allegations, even if true, do not establish the elements of a due process violation based on the destruction of evidence. Accordingly, the postconviction court did not err by denying this postconviction claim without a hearing.

First, we must determine whether the January 14 video interview was destroyed by state action. *Braunthal*, 31 P.3d at 173. There is no dispute that the interview was in the police department's possession and that it was ultimately deleted from the department's computer hard drive.

Second, we must determine whether the January 14 video interview possessed an exculpatory value that was apparent before it was destroyed. *Id.* If the evidence was not apparently exculpatory when it was destroyed, but was merely potentially useful to the defense, a defendant must also establish that its destruction resulted from government bad faith. *Arizona v. Youngblood*, 488 U.S. 51, 58 (1988); *Trombetta*, 467 U.S. at 486; *People v. Abdu*, 215 P.3d 1265, 1270 (Colo. App. 2009).

On appeal, Ward argues that the video had apparent exculpatory value because it would have contained Mitchell's explanation for why she falsely accused Twice, who could not have participated in the crime because he was incarcerated. At trial, Mitchell testified that she implicated Twice because she was scared of Ward. She claimed that she knew detectives would figure out that Twice was incarcerated and hoped that N.M. would ultimately implicate Ward. Ward argues that defense counsel did not introduce any evidence to refute Mitchell's explanation. He asserts that the missing video interview would have shown that Mitchell falsely accused Twice of participating in the crime to avoid her own

14

culpability, not because she was scared of Ward, thus increasing the likelihood that she also falsely accused Ward for the same reason.

But Ward alleges in his postconviction motion that "no one can recall the actual content of the interview itself . . . ." Thus, his claim that the tape contained apparently exculpatory evidence is speculative. Although Ward asserts Mitchell's statements in the missing interview would have contradicted her trial testimony, it is equally likely that the tape could have corroborated Mitchell's claim that she falsely accused Twice because she was scared of Ward. It is also possible that the tape contained other incriminating evidence regarding Ward's role in the crime. Because, according to Ward's own allegations, the content of the video interview is unknown, he cannot establish that it had an exculpatory value that was apparent before it was destroyed.

Instead, at most, Ward's allegations establish that the missing evidence was potentially useful to the defense. To establish a due process violation from destruction of evidence that is potentially useful, rather than apparently exculpatory, Ward must also establish that its destruction resulted from government bad faith. *Youngblood*, 488 U.S. at 58; *Trombetta*, 467 U.S. at 486; *Abdu*, 215 P.3d at 1270.

But Ward does not allege bad faith in his postconviction motion. He does not allege a nefarious motive or a deliberate decision on the part of the police to deprive Ward of this evidence. He merely asserts that "[f]or whatever reason, unlike other interviews for this case, this one video was not kept on the hard drive and [was] ultimately destroyed."[5] Ward's allegation suggests that the police inadvertently or negligently failed to maintain a copy of the video, which would not violate his right to due process. *See, e.g., Abdu*, 215 P.3d at 1270 (rejecting assertion that the negligent destruction of potentially useful evidence violates due process).

> [5] In the part of Ward's postconviction motion arguing entitlement to a new trial based on discovery of new evidence, which is an argument he does not raise on appeal, he says, "[T]he destruction of this evidence shows a reluctance on the part of the police to [sic] and the government to show all of the stories made by Ms. Mitchell." To the extent Ward now contends that this statement is an allegation of bad faith supporting his claim of a due process violation resulting from the destruction of evidence, we conclude that the allegation is conclusory and does not justify a hearing. *See People v. Venzor*, 121 P.3d 260, 262 (Colo. App. 2005) (a trial court can deny a Crim. P. 35(c) motion without a hearing when the claims are bare and conclusory in nature).

15

> Because Ward's failure to establish the second prong of the *Braunthal* test is fatal to his postconviction due process claim, we need not consider the third prong – whether the defense could obtain comparable evidence by other reasonably available means. 31 P.3d at 173. We conclude that the postconviction court did not err by denying this claim without a hearing.

(ECF No. 12-8 at pp.9-14 (brackets in original) (two footnotes omitted).)

Mr. Ward fails to demonstrate the state court's decision is based on an unreasonable determination of the facts in light of the evidence presented under § 2254(d)(2). Most importantly, he fails to demonstrate the state court unreasonably determined the contents of the January 14 follow-up interview were not apparently exculpatory and, at most, were only potentially useful to the defense.

Mr. Ward also fails to identify any materially indistinguishable Supreme Court decision that would compel a different result. *See House*, 527 F.3d at 1018. Therefore, he is not entitled to relief on claim two under the "contrary to" clause of § 2254(d)(1).

Finally, Mr. Ward is not entitled to relief under the "unreasonable application" clause of § 2254(d)(1) because he fails to demonstrate the state court's rejection of claim two "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*, 562 U.S. at 103. Mr. Ward makes no showing to overcome the presumption that the evidence in question was only potentially useful. *See* 28 U.S.C. § 2254(e)(1). Thus, the state court properly considered whether Mr. Ward had shown bad faith by the government as required under *Youngblood*. Because Mr. Ward, at best, made only a vague and conclusory allegation that the government acted in bad faith, the state court reasonably concluded his federal constitutional right to due process was not violated.

*See Snow v. Simons*, 474 F.3d 693, 716 (10th Cir. 2007) (applicant who presents "at most, a conclusory argument that the lost videotapes might have contained exculpatory material" is not entitled to habeas corpus relief).

For these reasons, Mr. Ward is not entitled to relief with respect to claim two.

**C. Claim Three**

Mr. Ward contends in claim three that his Fourth Amendment rights were violated by admission of evidence stemming from an illegal traffic stop on January 3, 2011. The evidence in question is a statement from Ms. Mitchell several hours after the traffic stop in which she downplayed her involvement in the victim's death and implicated Mr. Ward "to a certain extent." (ECF No. 8 at p.17.) Mr. Ward filed a motion to suppress evidence connected to the traffic stop; the trial court found the stop was illegal; and the trial court suppressed most of the evidence stemming from the traffic stop but not the vehicle itself or Ms. Mitchell's statement. Mr. Ward contends the state courts erred in concluding Ms. Mitchell's statement was attenuated from the illegal traffic stop. He also contends that, because Ms. Mitchell's statement was used to obtain a search warrant for the home where he was living, evidence seized during that search also should have been suppressed.

Respondents argue that claim three must be dismissed pursuant to *Stone v. Powell*, 428 U.S. 465 (1976). Under *Stone*, "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." *Id.* at 494 (footnotes omitted); *see also Miranda v. Cooper*, 967 F.2d 392, 401 (10th Cir. 1992). A full and fair opportunity to litigate a Fourth Amendment claim in state

court includes the procedural opportunity to litigate the claim as well as a full and fair evidentiary hearing. *See Miranda*, 967 F.2d at 401. A full and fair opportunity to litigate also "contemplates recognition and at least colorable application of the correct Fourth Amendment constitutional standards." *Gamble v. Oklahoma*, 583 F.2d 1161, 1165 (10th Cir. 1978). It is Mr. Ward's burden to demonstrate he was denied a full and fair opportunity to litigate his Fourth Amendment claim in state court. *See Peoples v. Campbell*, 377 F.3d 1208, 1224 (11th Cir. 2004); *Graham v. Costello*, 299 F.3d 129, 133-34 (2d Cir. 2002); *Sanna v. Dipaolo*, 265 F.3d 1, 8 (1st Cir. 2001); *Woolery v. Arave*, 8 F.3d 1325, 1328 (9th Cir. 1993); *Davis v. Blackburn*, 803 F.2d 1371, 1372 (5th Cir. 1986) (per curiam); *Doleman v. Muncy*, 579 F.2d 1258, 1266 (4th Cir. 1978).

Mr. Ward fails to demonstrate he did not have a full and fair opportunity to litigate his Fourth Amendment claim in the state court proceedings. The record before the Court demonstrates Mr. Ward had a procedural opportunity to litigate his Fourth Amendment claim in state court and that he took advantage of that opportunity. In particular, Mr. Ward raised the Fourth Amendment claim in a motion to suppress, the trial court held a hearing on the motion to suppress, and Mr. Ward raised the Fourth Amendment claim on direct appeal.

Mr. Ward also fails to demonstrate that the state courts did not make colorable application of the correct Fourth Amendment standards. Once again, the record before the Court demonstrates the state courts thoughtfully considered and applied appropriate Supreme Court precedent in addressing the Fourth Amendment claim.

Because Mr. Ward fails to demonstrate he was denied a full and fair opportunity to litigate his Fourth Amendment claim in state court, consideration of claim three is barred by

*Stone*. *See Smallwood v. Gibson*, 191 F.3d 1257, 1265 (10th Cir. 1999) (*Stone* bar applied when "[t]he state courts thoughtfully considered the facts underlying petitioner's Fourth Amendment claim and rejected the claim on its merits, applying the appropriate Supreme Court precedent"). Ultimately, Mr. Ward's real argument with respect to claim three is a substantive disagreement with the resolution of his Fourth Amendment claim by the state courts. However, disagreement with a state court's resolution of a Fourth Amendment claim is not enough to overcome the bar in *Stone*. *See Matthews v. Workman*, 577 F.3d 1175, 1194 (10th Cir. 2009) (rejecting petitioner's argument that the state court misapplied Fourth Amendment doctrine in reaching wrong conclusions about probable cause because that was not the proper question under *Stone*); *see also Pickens v. Workman*, 373 F. App'x 847, 850 (10th Cir. 2010) (stating that "[t]he opportunity for full and fair litigation is not defeated merely because a participant might prefer a different outcome.").

## IV. CONCLUSION

For the reasons discussed in this order, Mr. Ward is not entitled to relief. Accordingly, it is

**ORDERED** that the amended Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 (ECF No. 8) is denied and this case is dismissed with prejudice. It is further

**ORDERED** that there is no basis on which to issue a certificate of appealability pursuant to 28 U.S.C. § 2253(c).

BY THE COURT:

_____
RAYMOND P. MOORE
United States District Judge